UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LORRAINE S. DYER, et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>BUREAU OF INDIAN AFFAIRS, FORT MCDERMITT PAIUTE/SHOSHONE TRIBE, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY,<br><br>        Defendants. | 3:07-CV-00611-LRH-VPC<br><br>ORDER |

Presently before the court is Defendant Fort McDermitt Paiute and Shoshone Tribe's (the "Tribe") Motion to Dismiss (#5[1]). Plaintiffs Lorraine S. Dyer, et al., (collectively, "Plaintiffs") have filed an opposition (#7). The Tribe has not replied.

**I.     Facts and Procedural History**

This is a civil action arising out of a disputed lease on the Fort McDermitt Pauite-Shoshone Indian Reservation. Plaintiffs are members of the Fort McDermitt Paiute and Shoshone Tribe and reside on the Fort McDermitt Indian Reservation. From July 1, 1997, until June 30, 2007, Plaintiffs, under the name "Snapp Livestock Association," leased "Giacometto Tract No. G-12" ("Tract G-12" or "the tract") from the Tribe. Tract G-12 contains approximately 138 acres of land.

---

[1] Refers to the court's docket number.

1  In anticipation of the expiration of their lease, on May 4, 2007, Plaintiffs requested that the
2  Tribe renew their lease of Tract G-12. At a meeting held on June 12, 2007, the tribe decided to let
3  the lease expire on June 30, 2007. Subsequently, the Tribe posted the tract as vacant and received
4  eight lease applications, including an application from Plaintiffs as the Snapp Livestock
5  Association. At a meeting held on July 16, 2007, the Tribe voted to grant a new, ten year lease to
6  Arlo Crutcher.

7  On September 28, 2007, Plaintiffs submitted a letter to Bureau of Indian Affairs ("BIA")
8  Superintendent at the Western Nevada Agency, which the BIA forwarded to the Tribe. In the letter,
9  Plaintiffs complained of the following: (1) Arlo Crutcher will sublease to a non-enrolled tribe
10 member, his wife; (2) the Tribe cancelled a previous lease granted to Arlo Crutcher for non-
11 payment; (3) the Snapp Livestock Association is a cooperative association; and (4) Snapp
12 Livestock Association should have been granted the lease pursuant to Article VII, Section 3 of the
13 Tribe's Constitution. On October 16, 2007, the Tribe "heard and dismissed the [Plaintiff's]
14 complaint for lack of solid reasoning." (Def.'s Mot. Dismiss (#5) at 3:26-27.) Plaintiff Lorraine
15 Dyer and Arlo Crutcher were both present.

16 **II.     Legal Standard**

17 In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken
18 as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v.*
19 *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, a court
20 does not necessarily assume the truth of legal conclusions merely because they are cast in the form
21 of factual allegations in a plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d
22 752, 754-55 (9th Cir. 1994).

23 There is a strong presumption against dismissing an action for failure to state a claim. *See*
24 *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "The issue is
25 not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence

26

1 in support of the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other
2 grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). However, a plaintiff's obligation to
3 provide the grounds of his entitlement to relief requires more than labels, conclusions, and a
4 formulaic recitation of the elements of the cause of action. *Bell Atlantic Corp. v. Twombly*, 127 S.
5 Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the
6 speculative level on the assumption that all the allegations in the complaint are true (even if
7 doubtful in fact)." *Id*. (internal citations omitted).

**III.   Discussion**

In the complaint, Plaintiffs allege that the Tribe "violated their responsibility by giving [Tract] G-12 to another person," in violation of Article VII, Section 3 of the Tribe's Constitution. (Compl. (#1 at ¶ 6.)  Article VII, Section 3 of the Tribe's Constitution in part provides the following:

> In the leasing of tribal lands preference shall be given, first, to Indian cooperative associations, and secondly, to individual Indians who are members of the [] Tribe. No lease of tribal land to a nonmember shall be made by the Tribal Council unless it shall appear that no Indian cooperative association or individual member of the tribe is able and willing to use the land and to pay a reasonable fee for such use.

The Tribe asserts that Plaintiffs' claim must fail because the Tribe is entitled to sovereign immunity. As sovereigns, tribes are entitled to the same governmental immunity from suit without their consent that federal and state sovereigns possess. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (*citing Turner v. United States*, 248 U.S. 354, 358 (1919); *United States v. United States Fid. & Guar. Co.*, 309 U.S. 506, 512-513 (1940); *Pyallup Tribe v. Washington Dep't of Game*, 443 U.S. 165, 172-73 (1977)). Thus, absent a clear waiver by the tribe or unequivocal congressional abrogation, sovereign immunity bars suits against tribes. *Oklahoma Tax Comm'n v. Citizen Bank Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991) (*citing Santa Clara Pueblo*, 436 U.S. at 58).

Here, there is no indication that the Tribe has waived or that Congress has abrogated

3

1  the Tribe's sovereign immunity. Thus, the doctrine of sovereign immunity bars Plaintiffs'
2  claim in this case. Accordingly, the court will grant the Tribe's Motion to Dismiss.
3       IT IS THEREFORE ORDERED that the Tribe's Motion to Dismiss (#5) is hereby
4  GRANTED.
5       The Court Clerk is directed to enter judgment accordingly.
6       IT IS SO ORDERED.
7       DATED this 30th day of October, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE